Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| JULIO A. GONZÁLEZ SANTIAGO<br><br>Recurrente<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurridos | TA2025RA00326 | ***Revisión Administrativa***<br>Procedente de la Junta de Libertad bajo Palabra<br><br>Caso Núm. 59043<br><br>Confinado Núm. B7-03980<br><br>No concesión del privilegio de libertad bajo palabra-Reconsideración-Volver a considerar |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Jueza Lotti Rodríguez

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de enero de 2026.

El recurrente, señor Julio A. González Santiago, es miembro de la población correccional bajo la custodia del Departamento de Corrección y Rehabilitación. Nos solicita que revisemos la denegatoria de la Junta de Libertad bajo Palabra (Junta) a concederle el privilegio de cumplir parte de su sentencia fuera de la institución penal.

Los hechos que explican la determinación que hoy tomamos se exponen a continuación.

**I.**

La controversia ante nuestra consideración tuvo su origen el 28 de febrero de 2024, cuando se celebró una vista de consideración, en la cual se determinó la suspensión y se solicitó al Departamento de Corrección y Rehabilitación el informe de corroboración del hogar propuesto por el recurrente en la dirección, 400S-Locust Ave. Aj L.

342 Sanford, FL, EUA, así como la muestra de ADN conforme al Artículo 8 de la Ley Núm. 175 de 24 de julio de 1998, según enmendada. A esos efectos, la Junta emitió una *Resolución* 1 de mayo de 2024, la cual fue posteriormente enmendada por *Resolución Nunc Pro Tunc* el 7 de junio de 2024.

Para septiembre de 2024, fecha en que el caso fue reevaluado, la Junta no contaba con toda la información correspondiente para evaluar al recurrente. Por tanto, el 3 de octubre de 2024, archivada en autos el 24 de octubre de 2024, la Junta emitió una *Resolución de posposición.* En esta, se le solicitó al Departamento de Corrección y Rehabilitación que, dentro del plazo de noventa (90) días a partir del archivo en autos, le remitiera a la Junta el informe de corroboración del hogar propuesto por el recurrente, a saber, 400S Locust Ave. Apt. 342 Sanford, FL, EUA. Además, la Junta indicó que volvería a considerar el caso cuando recibiese la información solicitada o en el mes de febrero de 2025, lo que ocurriera primero.

Sin embargo, dicha información solicitada no fue recibida por la Junta en el término acordado. Ante tal incumplimiento, el 14 de marzo de 2025 la Junta emitió una segunda *Resolución de posposición* solicitándole nuevamente al Departamento de Corrección y Rehabilitación que remitiera los documentos antes mencionados dentro del plazo de sesenta y cinco (65) días, a partir del archivo en autos. Nuevamente, la Junta explicó que volvería a considerar el caso cuando recibiese la información solicitada o en junio de 2025, lo que ocurriera primero. Transcurrido el término provisto, el Departamento de Corrección y Rehabilitación incumplió con la orden emitida por la Junta. De modo que, no le quedó más remedio que evaluar el expediente con la información disponible.

En lo particular, el 17 de septiembre de 2025, notificada el 18 de septiembre de 2025, la Junta emitió una *Resolución* en la cual hizo las siguientes determinaciones de hechos:

## DETERMINACIONES DE HECHOS

1. El peticionario cumple una sentencia total de trescientos setenta y ocho (378) años y seis (6) meses por infracción a los Arts. *[sic]* 95 (agresión Agravada) tres (3) casos, [Art.] 83 (asesinato en primer grado) tres (3) casos, [Art.] 262 (conspiración) y [Art.] 258 (resistencia u obstrucción a la autoridad pública) del Código Penal 1974, infracción a los Arts. *[sic]* 5 (toda persona que posea o use una ametralladora o una escopeta de cañón corto será culpable de delito grave) diez y nueve (19) casos, [Art.] 6 (posesión de arma de fuego sin licencia), ocho (8) casos, [Art.] 7 (portación, conduzca o transporte cualquier pistola, revolver u otra arma de fuego sin licencia), cuatro (4) casos, [Art.] 8 (portación de arma de fuego sin licencia), veinte (20) casos de la Ley Núm. 17 de 19 de enero de 1951, según enmendada. Conforme al expediente, el peticionario cumple su sentencia, tentativamente, el 27 de junio de 2333.

2. La parte peticionaria propuso residir en el estado de Florida, Estados Unidos, con José A. Mercado en 400 S-Locust Ave. Apt. 342 Sanford, FL, 32771-2033. No obstante, la residencia no ha podido ser corroborada por el Programa de Reciprocidad del DCR.

3. Según la información más reciente consignada en el expediente de este caso, el peticionario se encuentra actualmente bajo un nivel de custodia de mínima seguridad.

4. Los delitos por los cuales el peticionario cumple sentencia son conductas que constituyen actos de alta peligrosidad social por ser de naturaleza grave y violenta. En el expediente surge que el peticionario ha sido evaluado psicológicamente por la Sección Programa de Evaluación y Asesoramiento (SPEA) del 30 de junio al 4 de julio de 2024.

5. Al peticionario le han realizado la prueba de ADN conforme al Artículo 8 de la Ley Núm. 175 de 24 de julio de 1998, según enmendada el 29 de febrero de 2024.

6. El peticionario estudia un curso de mercadeo digital de Caribbean University.

7. El peticionario fue evaluado por Arcángel Rodríguez Muñiz de Correctional Health Service el 9 de febrero de 2024 para determinar necesidades de tratamiento en el área de adicción y se determinó que no amerita tratamiento.

En virtud de lo antes expuesto, la Junta determinó que, conforme al Artículo X, Sección 10.1 (B) inciso (8)(b)(iii) del Reglamento Núm. 9603, *infra,* cuando el plan de salida propuesto sea fuera de la jurisdicción del Gobierno de Puerto Rico no se aceptará hasta no se presente la carta de aceptación del Programa de Reciprocidad. Esto, porque cuando el recurrente propone una reubicación fuera de Puerto Rico como parte de su plan de

reintegración a la libre comunidad, debe existir reciprocidad formal del estado receptor. No obstante, la Junta indicó que solicitó al estado de Florida que investigara la propuesta de plan de salida sometida por el recurrente. Ante ello, sostuvo que al momento de reevaluar el caso no se ha respondido a la solicitud de reciprocidad para aceptarle, lo cual deja incompleto el plan de salida. Por tanto, impide a la Junta contar con un plan de salida estructurado claro y realista.

A su vez, añadió que, conforme al expediente, se identifican factores de riesgo aún presentes. A esos efectos, recomendó tratamiento psicológico individualizado para mejorar el manejo de impulsos y emociones, necesario para su reinserción a la libre comunidad. De todo lo anterior, la Junta resolvió que el recurrente no cualifica para beneficiarse del privilegio de libertad bajo palabra, toda vez que sin un plan de salida no existen garantías de que este pueda continuar su proceso de rehabilitación fuera de la cárcel.

Inconforme con el proceder de la Junta, el 27 de octubre de 2025, el recurrente acudió ante este Tribunal mediante recurso de Revisión Administrativa y señala los siguientes errores:

> Err[ó] la J.L.B.P al no conceder el privilegio del beneficio de la Libertad Bajo Palabra al Sr. Julio González Santiago esto aduciendo que el mismo no contaba con un plan de salida estructurado.

> Err[ó] la J.L.B.P al no conceder el beneficio de la Libertad Bajo Palabra al Sr. Julio González Santiago esto estableciendo que este presenta factores de riesgo a pesar de que el mismo ha cumplido con los requisitos para dicha evaluación.

**II.**

**A. Revisión Judicial**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq.*, (en adelante, LPAU) establece un procedimiento uniforme para la revisión judicial de órdenes y resoluciones dictadas por las

agencias administrativas de Puerto Rico. La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro del marco de las facultades que le fueron delegadas. A través de la revisión judicial, los tribunales pueden constatar que los organismos administrativos cumplan con los mandatos constitucionales que rigen su función y, en especial, con el debido proceso de ley. Su propósito es proveerle a la ciudadanía un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias. La revisión judicial constituye el recurso exclusivo para revisar los méritos de las decisiones administrativas adjudicativas o informales. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 753-754 (2024).

En virtud de la LPAU, una parte que haya sido afectada adversamente por una orden o resolución final de una agencia y que haya agotado todos los remedios administrativos disponibles, podrá presentar un recurso de revisión ante el Tribunal de Apelaciones dentro de un término de treinta (30) días, contados a partir de la fecha de archivo en autos de copia de la notificación de la orden o resolución final de la agencia. Sec. 4.2 de la LPAU, 3 LPRA sec. 9672.

Cabe destacar que, en cuanto al alcance de revisión judicial en las determinaciones administrativas, es la función del foro judicial asegurarse que los dictámenes de los organismos administrativos se ciñan a sus facultades, conforme la ley que las habilita. Las determinaciones de hechos de las decisiones de estas serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Al revisar las conclusiones de derecho, el foro judicial considerará el *expertise* de la agencia en la interpretación de la ley que implanta, pero no estará obligado a guiarse por su criterio como una norma

ciega de deferencia automática. Sección 4.5 de la LPAU, 3 LPRA sec. 9675; *Vázquez et al. v. DACo*, 2025 TSPR 56 (2025).

**B. Junta de Libertad bajo Palabra**

El legislador creo la Junta de Libertad bajo Palabra mediante la Ley Núm.118 de 22 de julio de 1974, 4 LPRA sec. 1501 *et seq*. Este estatuto, le da a la Junta la autoridad legal para conceder a los confinados el privilegio de cumplir la última parte de su sentencia en libertad bajo palabra. *Benítez Nieves v. ELA et al.,* 202 DPR 818, 825 (2019).

El Artículo 3D de la Ley Núm. 118-1947, 4 LPRA sec. 1503d, contiene los criterios que la Junta considerara al momento de determinar la elegibilidad para el beneficio de libertad bajo palabra. La Junta tendrá facultad para conceder el privilegio de libertad bajo palabra a una persona recluida en una institución penal en Puerto Rico tomando en consideración:

1. La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.

2. Las veces que el confinado haya sido convicto y sentenciado.

3. Una relación de liquidación de la sentencia o sentencias que cumpla el confinado.

4. La totalidad del expediente penal, social y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.

5. El historial de ajuste institucional y del historial social y psicológico del confinado preparado por la Administración de Corrección y el historial médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.

6. La edad del confinado.

7. El o los tratamientos por condiciones de salud que reciba el confinado.

8. La opinión de la víctima.

9. Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

10. Lugar en el que piensa residir el confinado y la actitud de dicha comunidad de serle concedida la libertad bajo palabra.

11. Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento. La Junta tendrá la

discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.

Por otra parte, el Reglamento de La Junta de Liberta Bajo Palabra, Reglamento Núm. 9603 de 25 de septiembre de 2024, rige toda las normas procesales y adjudicativas que se le concede a esta agencia. En lo pertinente a la controversia que nos ocupa, el Artículo X, Sección 10.1 (B) inciso (8)(b) del Reglamento Núm. 9603, dispone que cuando el plan de salida propuesto sea fuera de la jurisdicción de Puerto Rico:

i. El peticionario proveerá a su técnico sociopenal la dirección física del lugar donde propone residir, de concedérsele la libertad bajo palabra, el nombre, número de teléfono, correo electrónico de la persona con la cual residirá y su relación con el peticionario. El técnico sociopenal a cargo del caso deberá referir dicha solicitud al Programa de Reciprocidad del Departamento de Corrección y Rehabilitación.

ii. La solicitud será tramitada por el Programa de Reciprocidad del Departamento de Corrección y Rehabilitación al Estado receptor para que este proceda a investigar la información provista por el peticionario y notifique inmediatamente a la Junta la determinación del Estado que estará supervisando al peticionario

iii. **No se aceptará un plan de salida fuera de la jurisdicción de Puerto Rico, hasta tanto no se presente la carta de aceptación del Programa de Reciprocidad.** (Énfasis Nuestro).

Cabe señalar, en este punto que el Reglamento 9603 fue derogado por el Reglamento Número 9684 de 8 de agosto de 2025 y con fecha de efectividad de 8 de septiembre de 2025. Así, el recurrente fue evaluado bajo las disposiciones del Reglamento Número 9603, pero a la fecha en que se notificó la determinación ya dicho reglamento no estaba vigente. No obstante, hemos revisado y las disposiciones reglamentarias antes citas relacionadas al plan de salida fuera de la jurisdicción son exactamente las mismas, por lo que no inciden en nuestra determinación.

### III.

El recurrente alega que erró la Junta al no concederle el privilegio de Libertad Bajo Palabra por este no contar con un plan

de salida estructurado y al todavía existir factores de riesgo presente.

En el caso ante nos, el recurrente indicó a la Junta que su hogar propuesto para disfrutar el privilegio de Libertad Bajo Palabra es en el estado de Florida. Ante ello, la Junta solicitó al estado de Florida que investigara la propuesta de plan de salida sometida por el recurrente. No obstante, al momento de la Junta reevaluar el caso el referido estado no respondió a la solicitud de reciprocidad para aceptarle, lo cual dejó incompleto el plan de salida del recurrente. Igualmente, en más de una ocasión la Junta solicitó al Departamento de Corrección y Rehabilitación que remitiera los documentos para evaluar el caso del recurrente. No obstante, dicha agencia incumplió con lo solicitado.

A la luz de normativa reseñada, el Artículo X, Sección 10.1 (B) inciso (8)(b)(iii) del Reglamento Núm. 9603, y del Reglamento Núm. 9684, hoy vigente, no se aceptará un plan de salida fuera de la jurisdicción de Puerto Rico, hasta tanto no se presente la carta de aceptación del Programa de Reciprocidad.

Lo anterior, obligaba a la Junta a denegar el privilegio por no contar con la carta de aceptación de programa de reciprocidad, pues sin un plan de salida completo no existen garantías de que este pueda continuar su proceso de rehabilitación fuera de la cárcel.

La colaboración entre el Departamento de Corrección y Rehabilitación es por ley una estrecha. Es el Departamento quien hace el referido a la Junta cuando entienda que el miembro de la población correccional ha cumplido el mínimo establecido por ley para ser considerado por la Junta o a solicitud por escrito del miembro de la población correccional. Reglamento 9683, Artículo IX, sección 9.1.

Cuando el plan de salida propuesto sea fuera de la jurisdicción de Puerto Rico, como en este caso, el técnico socio penal

a cargo del recurrente refiere la solicitud al Programa de Reciprocidad del Departamento de Corrección y Rehabilitación. Este último tendrá la responsabilidad de tramitar, a través de su Programa de Reciprocidad, al Estado receptor para que este proceda a investigar la información provista por el peticionario y notifique inmediatamente a la Junta la determinación del Estado que estará supervisando al peticionario. Reglamento 9683, Artículo X, sección 10.1 (8)(b).

Por su pertinencia a la determinación que hoy tomamos, citamos unas expresiones del ex Juez Asociado Señor Negrón García, en una opinión concurrente en el caso de *Pueblo v. Santiago Colón*, 125 DPR 442 (1990) (Sentencia), estas son:

> El sentido común muchas veces es una apreciación sintética, en cánones de justicia natural, de la misma naturaleza de las cosas, de la realidad vital. *La interpretación que repugne a ese sentido común ha de ponernos en guardia contra ella. Generalmente será una mala aplicación del Derecho, probablemente una aplicación debida a un método equivocado.* Aconsejamos revisar entonces todos los razonamientos, volverlos a repetir y volver a analizar. El Derecho no puede llevar a un resultado absurdo ni a un resultado injusto y debemos convencernos de que cuando nos lleva a este resultado es porque hemos seguido un camino equivocado, porque hemos errado en nuestros razonamientos.
>
> Recordemos lo dicho por Biondi. El absurdo jurídico no es el absurdo lógico, es lo injusto. Por lo demás, creo que cuando un absurdo, una injusticia se da, el absurdo jurídico es absurdo lógico también, *porque aún cuando sea perfectamente lógico en una lógica puramente formal, ha de ser ilógico para toda lógica humana, para una lógica jurídica.* (Énfasis suplido.) J. Vallet de Goytisolo, *Panorama del Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1973, págs. 86-87.

Repasemos; el Departamento y la Junta actúan en una colaboración estrecha. Una vez el Departamento entiende que un miembro de la población correccional ha cumplido el mínimo de su sentencia, lo refiere a la Junta, quien evalúa conforme a la información que el propio Departamento le proveerá. De nada sirve que el Departamento refiera si no cumplirá con su deber

reglamentario, en este caso, de tramitar a través de su Programa de Reciprocidad al Estado receptor, para que este proceda a investigar la información provista por el recurrente en cuanto al lugar donde propone residir. Con su omisión incumplirá el propio deber que se impuso mediante reglamentación y anulara la intención legislativa de conceder el privilegio a los miembros de la población correccional que así merezcan.

Si bien reconocemos que nos encontramos ante un privilegio y no un derecho, su evaluación y concesión no están a la merced de la voluntad o la suerte. Su concesión depende de los criterios establecidos en la reglamentación. Por tal razón, **revocamos la determinación recurrida y ordenamos a la Junta la reevaluación del recurrente a la brevedad posible**. No obstante, y para conceder a la Junta la oportunidad de cumplir con los deberes que la ley le impone, <u>ordenamos al Departamento de Corrección y Rehabilitación a tramitar a través de su Programa de Reciprocidad, al Estado correspondiente, la información provista por el recurrente en cuanto al lugar donde propone residir, así como cualquier otra que la Junta requiera acorde con el término breve en el cual la Junta habrá de Re candelarizar la vista</u>.

### IV.

Por los fundamentos expresados, se revoca la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones